UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Robert G. Kaiser, | Case No. 2:24-cv-00646-CDS-MDC |
| Plaintiff | **Order Granting Defendant's Motion to Dismiss and Discharging Order to Show Cause** |
| v. | |
| Wells Fargo Clearing Services, LLC, | |
| Defendant | [ECF Nos. 12, 20] |

    Pro se plaintiff Robert Kaiser brings this action against defendant Wells Fargo Clearing Services, LLC ("WFCS") seeking to recover for disability discrimination, age discrimination, and hostile work environment. Am. compl., ECF No. 11. This case, which originally involved federal claims, was removed by WFCS from the Eighth Judicial District Court, Clark County, Nevada. ECF No. 1. Kaiser then filed an amended complaint making claims based only in Nevada state law. ECF No. 11. WFCS moved to dismiss this complaint. ECF No. 12.[1] Reviewing the amendments to the complaint, I ordered WFCS to show cause that this court retained subject matter jurisdiction based on the amount in controversy requirement of diversity jurisdiction. ECF No. 20. I find that the amount in controversy exceeds $75,000. I also find that, because he did not file this lawsuit within ninety days of receiving his right to sue letter from the U.S. Equal Employment Opportunity Commission (EEOC), Kaiser's first amended complaint (FAC) should be dismissed.

I.    Background

    Kaiser is employed as a registered representative/financial advisor for WFCS. ECF No. 11 at 4. He is seeking to recover from WFCS for age discrimination, disability discrimination, and hostile work environment under NRS 613.330(1). On September 12, 2023, he filed a charge of

---

[1] This motion is fully briefed. *See* Pl.'s resp., ECF No. 16; Def.'s reply, ECF No. 24.

discrimination with the EEOC. EEOC discrimination charge, ECF No. 12-2.[2] He then filed an amended charge of discrimination with the EEOC on October 27, 2023, alleging disability and age discrimination. Am. EEOC discrimination charge, ECF No. 12-3. The EEOC issued a notice of the right to sue on October 30, 2023. EEOC right to sue letter, ECF No. 12-4. The notice specifically explained that if he did not file a lawsuit in federal or state court within ninety days of his receipt of the notice, his right to sue based on his amended charge of discrimination will be "lost." *Id.* at 2. In the FAC, Kaiser also alleges that he filed a charge of discrimination with the Nevada Equal Rights Commission (NERC) that includes "ongoing Hostile Environment Harassment and ongoing retaliation for his filing of his claim with the EEOC." ECF No. 11 at 3. He explains that he "has not yet received a Right to Sue Letter from the NERC." *Id.* According to Kaiser, once he receives this letter, he intends to seek leave to amend his complaint. *Id.* at 3–4.

## II.    Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual

---

[2] "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, "under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Id.* at 689 (internal quotation marks omitted). I take judicial notice of Kaiser's 2023 EEOC charge of discrimination because it is an administrative record. Fed. R. Evid. 201; *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (finding that "court[s] may take judicial notice of 'records and reports of administrative bodies'"), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Mazzorana v. Emergency Physicians Med. Grp., Inc.*, 2013 WL 4040791, at *5 n.3 (D. Nev. Aug. 6, 2013) (taking judicial notice of EEOC proceedings and documents submitted therein).

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III.  Discussion

#### A.  Subject matter jurisdiction

After Kaiser amended his complaint to remove the federal claims, I ordered WFCS to show cause that this court has jurisdiction over this action. Order, ECF No. 20. Specifically, based on a footnote included in the parties' joint motion to continue, there was disagreement about whether the amount in controversy exceeds $75,000. ECF No. 19 at 2 n.1.

"Federal courts are courts of limited jurisdiction, possessing 'only that power authorized by Constitution and statute.'" *See* U.S. Const. art. III, § 2, cl. 1; *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When initiating a case, "[a] plaintiff is the master of [their] complaint, and has the choice of pleading claims for relief under state or federal law (or both)." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 389–99 (1987)). Generally, plaintiffs are entitled to deference in their choice of forum. *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949–50 (9th

Cir. 2017). However, Congress has enacted statutes that permit parties to remove cases originally filed in state court to federal court. *See* 28 U.S.C. § 1441. Subject to certain requirements and limitations, a defendant generally may remove a case from state court to federal court where the case presents either diversity or federal question jurisdiction. 28 U.S.C. § 1441(a)–(c). Diversity jurisdiction requires: (1) all plaintiffs be of different citizenship than all defendants, and (2) the amount in controversy to exceed $75,000. *See* 28 U.S.C. § 1332(a). Once an action is removed to federal court, a plaintiff may challenge removal by filing a motion to remand. 28 U.S.C. § 1447(c). To protect the jurisdiction of state courts, the removal statute should be construed narrowly, against removal jurisdiction and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

As mentioned in the order to show cause, diversity of citizenship was undisputed,[3] so the remaining question was whether the amount in controversy exceeds $75,000. *See* ECF No. 20 at 2. In determining the amount in controversy, courts first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). The $75,000 threshold is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement. *See Id.* at 288–89; *Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). If the amount in controversy is not clear on the face of the complaint, a defendant must submit "summary-judgment-type evidence to establish that the actual amount in controversy exceeds $75,000." *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (noting that in determining the amount in controversy, courts examine not only the facts alleged in the complaint—which are assumed true for purposes of calculating the amount in controversy—but

---

[3] In his filing in response to WFCS's response to the show cause order, it appears that Kaiser may be arguing that there is not diversity between the parties. ECF No. 27 at 3–4. However, he cites only to caselaw discussing specific personal jurisdiction, not subject matter jurisdiction. *Id.* Personal jurisdiction is not at issue here. As for the complete diversity of the parties' citizenship, Kaiser does not dispute WFCS's assertion that: "Wells Fargo Clearing Services, LLC is a foreign limited liability company registered under the laws of the State of Delaware. Each of its members is a resident of the State of Missouri. Mr. Kaiser is a resident of the State of Nevada." ECF no. 19 at 2 n.1. Therefore, I find that there is complete diversity of citizenship between the parties.

also "summary judgment type evidence relevant to the amount in controversy at the time of removal").

In its response to the show cause order,[4] WFCS first argues that the amount in controversy exceeds $75,000 because the FAC states that Kaiser "seeks damages in an amount in excess of the minimum jurisdictional limits of the Court." ECF No. 25 at 5. In response, Kaiser states that the reason he included this language was only because he mistakenly believed that the jurisdictional threshold was $15,000, as it is in the Eighth Judicial District Court of Nevada. ECF No. 27 at 5. Seeing as Kaiser is a pro se plaintiff, this error is understandable. Therefore, I will not construe his statement in his FAC to be that he is alleging in excess of $75,000 in damages.

Nonetheless, I find that the "summary judgment" type evidence presented by WFCS establishes that the amount in controversy exceeds $75,000. Along with attaching the document, WFCS argues that Kaiser's Statement of Claim (SOC) submitted to the Financial Industry Regulatory Authority (FINRA), alleges the same conduct by WFCS and Kaiser "estimates his current economic damage, just from the tortious interference and retaliation at the Mesquite Branch alone, to be over one-hundred thousand ($100,000)." ECF No. 25 at 5 (quoting FINRA SOC, Def.'s Ex. A, ECF No. 25-2 at 18). In response, Kaiser states that he filed an amended FINRA SOC on July 23, 2024, and therefore the original SOC is nullified and should not be considered. ECF No. 27 at 4–5. He cites *Loux v. Rhay* for the proposition that the FINRA SOC, having been amended, should be "treated thereafter as non-existent." 375 F.2d 55, 57 (9th Cir. 1967). However, the case law he cites refers to amended complaints, not amendments to other outside filings. *See id.* ("**The amended complaint** supersedes the original, the latter being treated thereafter as non-existent." (emphasis added)). Therefore, there is no error in considering his original FINRA SOC in deciding whether the amount in controversy is met. The court could consider whether and to what extent the amended SOC changes the estimated

---

[4] The order to show cause (ECF No. 20) is discharged.

recovery amount, but Kaiser does not attach it to his response, opting only to attach documents proving that he did, in fact, amend. ECF No. 27 at 13–19. Given that Kaiser raises three claims, describes suffering "indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other pecuniary losses;" is seeking punitive and exemplary damages; fees and costs; and describes his economic damages as being over $100,000, I find that the amount in controversy is over $100,000. ECF No. 11 at 22–27; ECF No. 25-2 at 18. Therefore, this court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

### B. Kaiser's age and disability discrimination claims

Kaiser brings age and disability discrimination claims under NRS 613.330(1). The statute provides that:

> 1. Except as otherwise provided in NRS 613.350, it is an unlawful employment practice for an employer:
>
> (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin;
>
> (b) To limit, segregate or classify an employee in a way which would deprive or tend to deprive the employee of employment opportunities or otherwise adversely affect his or her status as an employee, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin; or
>
> (c) Except as otherwise provided in subsection 7, to discriminate against any employee because the employee has inquired about, discussed or voluntarily disclosed his or her wages or the wages of another employee.

Nev. Rev. Stat. § 613.330(1). WFCS argues that Kaiser's § 613.330 claims are time barred under NRS 613.430(1). This statue provides:

> 1. No action authorized by NRS 613.420 or Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., may be brought:

6

>    (a) More than 180 days after the date of the act complained of; or
>
>    (b) More than 90 days after the date of the:
>
>       (1) Issuance of the letter described in subsection 1 of NRS 613.420; or
>
>       (2) Receipt of the right-to-sue notice issued by the Nevada Equal Rights Commission pursuant to NRS 613.412 or by the United States Equal Employment Opportunity Commission pursuant to 42 U.S.C. § 2000e-5(f)(1), as applicable,
>
>    whichever is later.

Nev. Rev. Stat. § 613.430(1). Effectively, Nevada requires that for a person to file a discrimination lawsuit, they must exhaust their administrative remedies through filings with the EEOC or NERC. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (noting that exhaustion requires that a plaintiff file a timely charge with the EEOC or an appropriate state agency, allowing the agency time to investigate the charge). Once a claimant is given a right to sue notice, the person has ninety days in which to pursue their claims in court. *Missirlian v. Huntington Mem'l Hosp.*, 662 F.2d 546, 549 (9th Cir. 1981) ("[T]he ninety-day time limit on Title VII civil suits does not commence until the plaintiff receives notice of his or her right to sue and the date from which the time limit on this right starts to run."); Nev. Rev. Stat. § 613.430(1)(b).

"When a Title VII claimant fails to file within the ninety-day statute of limitations, the action is barred." *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992). "Procedural requirements such as a statute of limitations are to be strictly adhered to." *Id.* "[C]ourts presume a right to sue letter is received within three days of its mailing for purposes of calculating whether a Title VII complaint was filed within the ninety-day limitations period." *Payan v. Aramark Mgmt. Servs. L.P.*, 495 F.3d 1119, 1125–26 (9th Cir. 2007).

### 1. Pursuing arbitration does not automatically extend the ninety-day statute of limitations.

Kaiser represents that his right to sue letter was issued by the EEOC on October 30, 2023. ECF No. 11 at 3. The parties do not appear to dispute that the statutory deadline for Kaiser was therefore set on or around January 29, 2024.[5] *See* ECF No. 11 at 3; ECF No. 12 at 6; ECF No. 16 at 6. WFCS argues that because Kaiser did not file this lawsuit until March 4, 2024, his claims for disability and age discrimination are time barred. ECF No. 12 at 5–6.

In response, Kaiser first argues that his claims are not time barred because the ninety-day period should have begun not on the date he received his right to sue letter but on "the date the complaint is filed with [the Financial Industry Regulatory Authority (FINRA)] for arbitration." ECF No. 16 at 6. He argues that because this claim was initially filed with FINRA on January 29, 2024,[6] the March 4, 2024 filing was timely. *Id.* He argues that he filed with this court only after WFCS sought bifurcation of statutory discrimination claims from all other claims and causes of action, which he alleges are still pending in FINRA arbitration. *Id.*

WFCS argues in its reply, however, that the statute of limitations does not pause or restart during arbitration proceedings in Title VII cases. ECF No. 24 at 3. WFCS cites *International Union of Electric, Radio & Machine Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc.*, for the proposition that "[t]he existence and utilization of grievance procedures does not toll the running of the limitations period that would otherwise begin on the date of the firing, Title VII remedies being independent of other pre-existing remedies available to an aggrieved employee." 429 U.S. 229, 230 (1976). Aside from the fact that WFCS only quotes the syllabus of the case,[7] this case is not exactly on point because it dealt with the statute of limitations to file a grievance

---

[5] Kaiser refers to the date "January 29, 2023," as the date he filed for FINRA arbitration in his FAC but based on the discussion in the briefing on this motion, I understand that this was a scrivener's error and should instead read "January 29, 2024."

[6] Again, Kaiser refers to the date "January 29, 2023," as the date he filed for FINRA arbitration in his response. ECF No. 16 at 6. Based on the discussion in the briefing on this motion, I understand that this was a scrivener's error and should instead read "January 29, 2024."

[7] Although similar quotes can be found in the opinion, the material quoted, and the page number cited, is only found in the syllabus. *See, e.g.*, *USI Ins. Servs., LLC v. Wright*, 2024 WL 1382460, at *3 (N.D. Cal. Apr. 1, 2024) ("He appears to quote from the syllabus, which is not part of the Supreme Court's opinion, thereby **misquoting and misrepresenting** the case." (emphasis in original)).

with the EEOC (not to file a lawsuit after receipt of a right-to-sue notice) and specifically discussed arbitration in the context of collective bargaining agreements. *Id.* at 236 ("We think that petitioners' arguments for tolling the statutory period for filing a claim with the EEOC during the pendency of grievance or arbitration procedures under the collective-bargaining contract are virtually foreclosed by" previous decisions.). WFCS also cites *Board of Regents v. Tomanio*, but the passage to which they point the court is only the Supreme Court's generic summation of the holding in *Robbins*. *See* 446 U.S. 478, 490 (1980) ("[W]e held in [*Robbins*] that it would not be inconsistent with Title VII to decline to toll the statute of limitations during labor grievance or arbitration procedures because 'contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII 'have legally independent origins and are equally available to the aggrieved employee.'" (quoting *Robbins*, 429 U.S. at 236)).

The Ninth Circuit has not directly addressed the issue of whether the ninety-day statute of limitations that follows an EEOC right-to-sue notice is stayed pending arbitration, but it has used more expansive language in the application of *Robbins*. For example, in another case involving the statute of limitations to file a charge with the EEOC, the Ninth Circuit noted that "participation in a grievance procedure does not toll the filing period." *Washington v. Anderson*, 252 F. App'x 177, 178 (9th Cir. 2007) (citing *Robbins*, 429 U.S. at 236); *see also Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 404 (9th Cir. 1990) ("The [Supreme] Court has made it clear that it is reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief." (citing *Robbins*, 429 U.S. at 236–40)).

However, other circuits and out-of-circuit district courts consistently hold that pursuit of FINRA arbitration does not stop the ninety-day clock. Facing a nearly identical scenario, the District of Delaware noted that "[t]he Supreme Court later characterized *Robbins* as, 'we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.' Thus, the time while

9

Plaintiffs pursued their claims in the FINRA arbitration did not act to toll the time within which to file Title VII claims with the relevant administrative agency." *Goldstein v. BGC Holdings, L.P.*, 2021 WL 3526507, at *3 (D. Del. Aug. 11, 2021) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980)). In a case unrelated to workplace discrimination but also involving FINRA arbitration and a federal law statute of limitations, the Eighth Circuit held that pursuing arbitration does not toll the statute of limitations because "[a]lthough the Supreme Court has applied tolling under a different federal statute when a plaintiff initially brought suit in a state court where venue was improper, arbitration is different." *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 889 (8th Cir. 2015). Specifically, the court explained that a "plaintiff who pursues arbitration is not required to await the outcome to bring an action in court, and there is an accepted procedure for pursuing arbitration and a lawsuit simultaneously." *Id.*; *see also Fonseca v. USG Ins. Servs.*, 467 F. App'x 260, 261 (5th Cir. 2012) (discussing that, facing a dwindling statute of limitations, a plaintiff could file suit within the statute of limitations and then seek a stay of the action pending arbitration; "[s]uch a course would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed"); *United States ex rel. Wrecking Corp. of Am. v. Edward R. Marden Corp.*, 406 F.2d 525, 526 (1st Cir. 1969) (per curiam) (noting similarly that, in a similar situation, a party could consider "the bringing of suit within the limitations period, followed by a stay of such proceedings pending the results of arbitration."). I agree that Kaiser was obligated to file suit within ninety days of the notice of the right to sue, even if FINRA arbitration was a possible alternative. I am persuaded by the out-of-circuit case law that there is no reason why Kaiser could not have pursued legal action and requested a stay pending the arbitration. His failure to do so despite the notice unequivocally telling him that "**[his] lawsuit must be filed WITHIN 90 DAYS of [his] receipt of this notice**" was a risk. Outside of potential equitable tolling, discussed below, I do not find there is any language in the statutes or case law to support the proposition that

pursuing arbitration somehow extends the statute of limitations to file a workplace discrimination lawsuit after receipt of a notice of the right to sue by the EEOC.

### 2. *Kaiser has not established that equitable tolling is warranted.*

Kaiser also argues that it would be "manifestly unjust" to "allow Defendant to benefit from its own delay," alleging that it was WFCS's delay in deciding whether to bifurcate the arbitration that caused him to surpass the ninety-day deadline. ECF No. 16 at 6. I understand Kaiser's argument to be that the statute of limitations should be equitably tolled. Equitable tolling requires a plaintiff "to at least demonstrate that, despite their exercise of diligence, extraordinary circumstances beyond their control prevented them from timely filing their claims." *Id.* (citing *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013)).

As discussed prior, Kaiser was permitted ninety days to file this lawsuit following receipt of the right to sue notice. Even if WFCS took its time deciding whether to allow FINRA arbitration of the claims, it was ultimately Kaiser's own misunderstanding of the law—specifically that pursuing arbitration automatically stayed the ninety-day requirement under NRS 613.430(1)(b)(2)—that led to this lawsuit being filed late. A misunderstanding of law is not an "extraordinary circumstance" that warrants equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Smith v. Ryan*, 2016 WL 4253932, at *2 (D. Ariz. Aug. 12, 2016) ("[M]isunderstanding the law is not a basis for equitable tolling."); *Smith v. United States*, 2021 WL 5910486, at *3 (W.D. Wash. Dec. 1, 2021), *report and recommendation adopted*, 2022 WL 36896 (W.D. Wash. Jan. 3, 2022) ("The 'extraordinary-circumstances prong,' . . . relates to factors outside the litigant's control. . . . A party's own misunderstanding of law or a tactical litigation mistake is not sufficient." (citing *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). Therefore, I do not find that equitable tolling is appropriate based on Kaiser's allegations. His claims for age and disability discrimination are dismissed **with prejudice**.

### C. Kaiser's hostile work environment claim

Kaiser also raises a hostile work environment claim under NRS 613.330, claiming that he was harassed "because of his association with his sister who he cared for in loco parentis." ECF No. 11 at 26. He states that he has

> filed a claim with the Nevada Equal Rights Commission ("NERC") that includes ongoing Hostile Environment Harassment and ongoing retaliation for his filing of his claim with the EEOC. Plaintiff has not yet received a Right to Sue Letter from the NERC. Upon receipt of a Right to Sue letter, regarding additional separate claims that include retaliation, Plaintiff will seek leave from this Court to amend this complaint.

*Id.* at 3–4. Under Nevada law, if a plaintiff has not exhausted all administrative remedies through NERC prior to bringing a claim in court, the court generally may not adjudicate the claim. Nev. Rev. Stat. § 613.420; *Palmer v. State*, 106 Nev. 151, 153 (1990) (noting that, with few exceptions, there is a "rule that exhaustion of remedies is required by NRS 613.420 prior to filing an employment discrimination action in court"). A limited exception is granted due to a situation in which because of "prolonged inaction by the NERC, a complainant may face a statute of limitations deadline or an irretrievable loss of evidence." *Palmer*, 106 Nev. at 153. However, "it will always be the complainant's burden to convincingly prove that his or her claim is realistically endangered by any prolonged inaction by the NERC." *Id.* at 153–54. Here, Kaiser does not allege that NERC has delayed consideration of his claims and, after WFCS raised this issue in its motion to dismiss, does not address it in his response. ECF No. 12 at 6; ECF No. 16. Because Kaiser has not exhausted his administrative remedies and offers no evidence or argument as to why his claim should be excepted from the rule in NRS 613.420, his hostile work environment claim is dismissed **without prejudice**.

### D. Enforcement of the allegedly binding arbitration provision

It appears Kaiser may also be seeking to argue for enforcement of the allegedly binding arbitration provision of his employment contract with WFCS. *See* ECF No. 11 at 4 ("Plaintiff signed an employment document agreeing that any disputes between Plaintiff and Defendant

are to be submitted to the Financial Industry Regulatory Authority . . . for binding arbitration."); ECF No. 16 at 2 ("The intention of the parties is crystal clear – WFCS and Plaintiff agreed to arbitrate all claims relating to plaintiff Kaiser's employment set forth in the signed [binding arbitration agreement]."). These claims are not addressed whatsoever in the FAC and present entirely unique arguments to the ones he has otherwise raised. Kaiser would need to attempt to enforce the arbitration agreement against WFCS in a separate action.[8]

### IV. Conclusion

IT IS HEREBY ORDERED that Wells Fargo Clearing Services' motion to dismiss **[ECF No. 12] is GRANTED**; therefore, Kaiser's claims for disability discrimination and age discrimination detailed in his FAC are **DISMISSED WITH PREJUDICE**, and Kaiser's claim for a hostile work environment is **DISMISSED WITHOUT PREJUDICE**.

Kaiser must file, on or before January 21, 2025, a notice advising the court (1) whether NERC has provided him a right-to-sue notice in the time between his filing of his complaint and the date of this order and (2) when he received such notice, if any.

The order to show cause **[ECF No. 20] is discharged**.

Dated: January 6, 2025

_____
Cristina D. Silva
United States District Judge

---

[8] I note that this statement does not represent a consideration of the merits of such a claim. Rather, it merely describes the procedural mechanism Kaiser would be required to follow if he seeks to further pursue enforcement of the arbitration provision of the employment contract.